BURNS *v*. FISHER.

Opinion delivered October 25, 1926.

1. DRAINS—NOTICE OF PROCEEDINGS TO ESTABLISH DISTRICT.—Under Crawford & Moses' Dig., §§ 3607-3666, providing for "an alternative system of drainage districts," notice of proceedings to establish a drainage district in Prairie County *held* sufficiently definite as to place of hearing to give the county court jurisdiction, notwithstanding the notice referred to the "county court of the Southern District of Prairie County," there being but one county court in the county, which was held in the Northern District.

2. DRAINS—SUFFICIENCY OF NOTICE OF PROCEEDINGS.—Under Crawford & Moses' Dig., §§ 3607-3666, notice of proceedings to

establish a drainage district which, after describing the lands within the proposed district, recited that such lands embraced the following public roads, tramroads and railroads, *held* to describe sufficiently the rights-of-way of two railroads within the proposed district.

Appeal from Prairie Chancery Court, Southern District; *John E. Martineau,* Chancellor; affirmed.

*W. A. Leach,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* and *Joseph Morrison,* for appellee.

WOOD, J. This is a proceeding under chapter 51, §§ 3607-3666, of Crawford & Moses' Digest, providing for "an alternative system of drainage districts," to organize a drainage district in Prairie County, Arkansas. By act No. 133 of the Acts of 1885, page 217, Prairie County was divided into two judicial districts, designated as the Northern District and the Southern District. All that portion of the county lying north of certain lines described in the act constituted the Northern District and all that portion lying south of those lines constituted the Southern District. Des Arc was the county seat of Prairie County, and, prior to the passage of the act *supra,* all the courts were held there. By the above act the circuit, chancery and probate courts and the court of common pleas in and for the Northern District were to continue to be held at Des Arc, the county seat, and these courts, for the Southern District, were to be held in the town of DeValls Bluff. The place for the holding of the sessions of the county court for both districts was not affected by the act, but the place for the holding of the sessions of that court remained, as it had always been, at Des Arc, the county seat.

On the 17th of July, 1925, a petition was filed under the drainage act *supra,* in the office of the county clerk of Prairie County at Des Arc, for the creation of the district. All the lands described in the petition were situated within the territory constituting the Southern District of Prairie County, as divided by the act of 1885 *supra.* The county court entered an order directing that

notice be given of the petition for the creation of the drainage district, in which notice all the lands to be embraced in the proposed district are specifically described, all situated within the Southern District of Prairie County, as designated under the act of 1885. The rights-of-way of the Chicago, Rock Island & Pacific Railroad Company and of the St. Louis Southwestern Railway Company extended over and across the lands embraced in the district, and likewise a number of public roads and highways. The lands embraced in the district are specifically described in the notice. The notice recites that there had been a preliminary survey of the proposed district of the lands in the Southern District of Prairie County, as set forth in the petition, naming the petitioners. Then it recites that the district is to embrace all of the lands which will be benefited by a ditch to run as follows: (Here is set forth the general description of the lands through which the ditch runs, showing its direction, and this is followed by a recital, "and embracing the following lands, public roads, tramroads and railroads)." Then a specific description of the lands to be embraced in the proposed district is set forth. The notice concludes with a recital, to wit: "All persons owning property within said proposed drainage district are hereby notified that the county court of the Southern District of Prairie County, Arkansas, has set the 18th day of September, 1925, for the hearing of the matter of establishing said proposed district, and that they may appear before said court on said date, and show cause in favor of or against the establishment of said proposed drainage district."

On the 18th day of September, 1925, the county court of Prairie County, pursuant to the above notice, entered its final order creating Drainage District No. 2 of Prairie County. After setting forth the general description of the lands contained in the petition and the notice, this order recites that the court found that all the preliminary requirements of the law essential to the creation of the district had been complied with, and then

recites as follows: "It is therefore ordered by the court that a drainage district for the purpose of constructing a system of drains and ditches, together with necessary lateral ditches as described in said report of M. L. Buerkle, as such engineer, and embracing the following lands in said county." The order then described specifically the lands as set forth in the petition, report of the engineer, and the notice. After this specific description, the order recites as follows: " * * * together with all railroads and public roads and highways in said territory, be and the same is hereby created and established as a drainage district; that the same shall be hereafter known and designated as Drainage District No. 2 of Prairie County, Arkansas, and that said district be and it is hereby authorized and empowered to do and perform all such things in the draining of the territory embraced therein as may be necessary and as the law permits. It is further ordered by the court that John F. Fisher, William Schafer and Henry Wilkes, three owners of real property within said district, be and they are hereby appointed as the board of commissioners of said district."

The plaintiffs instituted this action in the Prairie Chancery Court, Southern District, against the defendants, the commissioners of Drainage District No. 2 of Prairie County, Arkansas, attacking the validity of the district, and alleging that all of the proceedings creating the Drainage District No. 2 of Prairie County were illegal and void, and praying that the defendants be enjoined from performing any of their duties as commissioners of such district. The answer denied that the district was invalid.

The above are substantially the facts upon which the cause was heard, and the trial court entered its decree dismissing the complaint for want of equity, from which is this appeal.

1. Learned counsel for the appellants contends that the order of the county court creating the district was void on the ground that the notice was not sufficient to

give the county court jurisdiction. He argues, first, that the notice was insufficient because it fails to set forth with certainty the time when, and the place where, the hearing should be had. It will be observed that the notice contains the following recital: "All persons owning property within said proposed drainage district are hereby notified that the county court of the Southern District of Prairie County, Arkansas, has set the 18th day of September, 1925, for the hearing of the matter of establishing said proposed district, and that they may appear before said court on said date and show cause in favor of or against the establishment of said drainage district." The agreed statement of facts, among other things, shows the following: "That there is but one county court in Prairie County. It convenes at Des Arc, in said county, and has convened there and nowhere else for fifty years previous to the publication of the said notice; that the residents of Prairie County, and particularly that portion which is situated in the drainage district, know that no county court is held in DeValls Bluff in said county, or anywhere but in Des Arc."

The notice designated September 18, 1925, as the day set for the hearing of the petition for the creation of the district. It was therefore definite as to the time fixed for the hearing. The notice was sufficiently definite as to the place set for the hearing, because, under the law, the sessions of the county court of Prairie County could only be held at Des Arc, the county seat. As we have seen, the act of 1885 *supra* did not make any change in regard to the holding of sessions of the county court. Therefore, even in the absence of a stipulation in the record showing that the county court had convened at Des Arc, the county seat, for fifty years, and that the residents of that portion of Prairie County situated in the drainage district knew that fact, they nevertheless would have to take notice of the law, and were bound to know that the county court would hear the petition for the establishment of the proposed drainage district at Des Arc—that the hearing could not be had elsewhere. The notice there-

fore was sufficient to give all property owners in the
proposed district notice that the place for the hearing
was at Des Arc.

2. Counsel for appellant next contends that the
notice is insufficient because it does not contain a descrip-
tion of the rights-of-way of the two railroads located
within the proposed district. The notice set forth in
the complaint contained a general description of the
lands, showing the route of the proposed drainage ditch,
and contained a specific description of the lands embraced
in the district, and recited that these lands "embraced
the public roads, tramroads, and railroads contained in
the district." This was a sufficient description of the
public highways, tramroads and railroads that were
located on the lands within the district. In the descrip-
tion in the notice embracing the "lands, public roads,
tramroads and railroads," we find also the following:
"commencing where the said right-of-way of the St.
Louis Southwestern Railway intersects the south line of
the northwest quarter of the southwest quarter of sec-
tion 8, township 1 south, range 5 west, running thence
through section 17 and the north half of section 20, thence
along the west line of the east half of sections 20 and
29; commencing where the Chicago, Rock Island &
Pacific Railway intersects the north line of section 16,
thence through said sections 16 and 21, respectively,
to the south line of the north half of section 28, all in
township 1 south, range 5 west." This is the descrip-
tion of the rights-of-way as contained in the notice, which
is made Exhibit B to plaintiff's complaint and which,
the parties agreed, was a copy of the notice, as required
by law, of the hearing of the petition for the creation
of the district. It is difficult to conceive how any more
accurate description of the rights-of-way of the railroads
embraced in the district could have been given.

It is sufficient to meet the requirements of the stat-
ute, so far as the public roads embraced in the district
are concerned, that the notice recites that the district
embraced "the following lands, *public roads*, tramroads

'and railroads,'' following the same with a specific description according to Government surveys of the lands embraced in the district. This description of the lands would necessarily include the public highways running through the lands embraced in the district. The order of the county court establishing the district describes the lands embraced therein according to the description of the Government survey, and, after so describing them, recites that these, ''together with all railroads and public roads and highways in said territory be, and same is, hereby created and established as 'a drainage district.'' The recitals of the notice were sufficient to meet the requirements of the statute, and the recitals of the court's order show that it was made pursuant to the notice given.

In this view of the record it is wholly immaterial whether the attack by the appellants on the validity of the district be direct or collateral. The notice meets the requirements of the law in either case. The order of the county court creating the district is valid, and the chancery court ruled correctly in so holding and in dismissing the appellants' complaint for want of equity. The decree is therefore affirmed.